FILED

2013 Feb-21  PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **CECIL CLARK LAYTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:11-CV-3110-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

Plaintiff Cecil Clark Layton ("Layton") seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied his application for disability insurance benefits ("DIB") under Title II of the  Social Security Act (the "Act") and his application for supplemental security income ("SSI") under Title XVI of the Act. Layton timely pursued and exhausted his administrative remedies available before the Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g) of the Act. The court has carefully considered the record and, for the reasons which follow, finds that the decision of the Commissioner is due to be **AFFIRMED**.

## FACTS AND PROCEDURAL HISTORY

Layton was a forty-four (44) year old male at the time of his hearing before the Administrative Law Judge ("ALJ").  (R. at 35.)  He has a ninth grade education.  (R. at 35–36.)  He worked twenty-five (25) years as a truck driver.  (R. at 35.)

In 2004, Layton developed rectal cancer.  Layton underwent a colostomy, radiation, and chemotherapy, and has remained cancer free.  However, beginning in 2007, Layton has developed a number of hernias related to his colostomy.  He has undergone four successful surgeries to repair them.[1]  (R. at 23–24.)  Layton testified that he experiences pain related to his hernias so that he must lie down two to three hours at a time to get relief.  (R. at 40–41.)  Layton also testified that he cannot lift anything over five pounds.  (R. at 37.)  His daily activities include personal care, watching TV, going to the store, making sure his children get on and off the bus, and preparing simple meals.  (R. at 126–30.)  Layton said that he needs help with his colostomy bag.  He does no yard work, but he sometimes washes clothes and dishes. (R. at 128.)  When Layton goes to the store, he buys only "add-in stuff," such as a loaf of bread.  (R. at 129, 139.)  Layton also takes the family dog outside from time to time.  (R. at 137.)

---

[1]  In his initial brief, Layton adopts the ALJ's recitation of the facts as "true and correct." (Doc. 10 at 2.)  Therefore, the court will not recount the details of Layton's surgical history.

Layton applied for DIB and SSI on August 26, 2008, alleging disability beginning on April 11, 2008. (R. at 102.)  The Commissioner initially denied his claim on October 15, 2008.  Layton requested a hearing before an ALJ, which occurred on December 9, 2010.  At the hearing, the ALJ heard medical testimony from Dr. James N. Anderson, and a vocational expert.  The ALJ denied Layton's claim on January 13, 2011.  Thereafter, Layton filed this action.

## STANDARD OF REVIEW[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a

---

[2]  In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI).  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

conclusion." *Id*.  Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*.  Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for DIB and SSI as well as establish his entitlement for a period of disability, a claimant must be disabled as defined by the Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] 12 months."  20

---

[3]  The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through February 14, 2013.

C.F.R. § 416.905(a).[4]  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 416.908.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 416.920(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)    whether the claimant can perform her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2010); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, [he] will automatically be found disabled if [he] suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform [his] work, the burden shifts to the Secretary to show that the claimant can perform

---

[4] The language of this section (as well as 20 C.F.R. § 416.920 cited below) was amended in 2012.  The text of the new provision became effective on August 24, 2012.  However, the textual changes in these provisions are irrelevant for purposes of this memorandum opinion.

some other job." *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993), *overruled in part on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

At Step One, the ALJ found that Layton is not currently employed.  At Step Two, the ALJ found that Layton has the following severe impairments: obesity; ventral hernia, status post repair; a history of colon/rectal cancer, resolved with permanent colostomy; history of alcohol and tobacco abuse. (R. at 20.) Additionally, the ALJ found that Layton's hypertension was a nonsevere impairment because it appears under control. (*Id.*) At Step Three, the ALJ determined that none of Layton's impairments meet or medically equal a listed impairment.

The ALJ then determined Layton's residual functioning capacity ("RFC"). Because Laytong's RFC is central to the issues in this appeal, the court will quote the ALJ at length.

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functioning capacity to perform nearly a full range of light work, as defined in 20 CFR 404.1567(b), in that the claimant can sit for 6 hours out of 8 hours, and without interruption for 1 hour; stand and walk for 6 hours out of 8 hours, and without interruption 1 hour; needs a

> sit/stand option which takes into account the above time limitations for sit/stand/walk activities, plus all normal breaks that are available in the normal workplace environment; can perform simple grasping and fine manipulation with right and left hands; is limited to only occassional use of the right foot, left foot and both feet in repetitive movements such as the operation of foot controls or pushing an pulling; can occasionally bend, stoop, crawl, climb stairs, crouch, kneel, balance; can never climb ladders, ropes, or scaffolds, or be around activities involving unprotected heights or be around moving and hazardous machinery, drive commercialized motorized vehicles, or be exposed to the concentrated or excessive amounts of pulmonary irritants, such as dust, odors, fumes, extremes in temperature and humidity and the like. The claimant has occasional intermittent mild to moderate pain, which occasionally interferes with concentration, persistence and pace.

(R. at 21.) In making his RFC determination, the ALJ considered the opinion of Dr. Charles R. Lambert, a treating physician. Dr. Lambert opined that Layton suffers disabling pain from his hernias and should do "no lifting or straining whatsoever." (R. at 593.) The ALJ specifically discredited Dr. Lambert's opinion regarding Layton's pain. (R. at 26.) Similarly, the ALJ considered Layton's testimony that he must lie down for two to three hours at a time to relieve his pain. The ALJ found that Layton's testimony is not fully credible. (R. at 25–26.) The ALJ also considered the testimony of Dr. James Anderson, a medical expert who did not examine Layton. Dr. Anderson opined that, based on Layton's medical records, he could perform light work. The ALJ gave great weight to Dr. Anderson's opinion. (R. at 27.)

The ALJ then proceeded to Step Four. The ALJ found that, given Layton's RFC, he could not perform any past relevant work. At Step Five, the ALJ found that,

given Layton's age, education, work experience, and RFC, a sufficient number of jobs exist in the national economy such that he could still find employment. For that reason, the ALJ determined that Layton is not disabled.

## ANALYSIS

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574–75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574–75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5]

---

[5]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

8

Layton makes two arguments.  First, he contends that the ALJ failed to give proper weight to the opinion of Layton's treating physician, Dr. Lambert, regarding his pain.  Second, Layton contends that the ALJ improperly discredited Layton's testimony regarding his pain.  The court will address each in turn.

### A.    The Opinion of Layton's Treating Physician

The ALJ must afford substantial weight to the opinion of a treating physician "unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th Cir. 1997) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).  Good cause exists when "the doctor's opinion [is] not bolstered by the evidence, or where the evidence support[s] a contrary finding." *Id.* (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.1987) and *Sharfarz v. Bowen*, 825 F.2d 278, 280–81 (11th Cir.1987)).  Additionally, good cause exists when a doctor's opinion is "conclusory or inconsistent with [his] own medical records." *Id.* (citing *Jones v. Dep't of Health & Human Servs.,* 941 F.2d 1529, 1532–33 (11th Cir.1991) and *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir.1991)).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Id.*

In this case, Dr. Lambert opined that Layton suffers from chronic, moderate pain.  (R. at 593.)  He said this pain will require Layton to rest occasionally

throughout the day.  (*Id.*)  Dr. Lambert further opined that Layton will "likely have to miss 2 or more days per month from work" because of pain related to his hernia.[6] (*Id.*)   Conversely, Dr. Anderson, a medical expert who did not examine Layton, testified that Layton could perform light or sedentary work.  (R. at 42–43.)  While Dr. Anderson did not specifically address Layton's pain, he stated that his opinion was consistent with Layton's medical records.  (R. at 42.)

The ALJ ultimately credited Dr. Anderson's opinion over the opinion of Dr. Lambert.  (R. at 27.)  Substantial evidence supports the ALJ's decision.  First, the ALJ found that Dr. Lambert did "not restrict the claimant from all work activity."  (R. at 26.)  Instead, Dr. Lambert said that Layton would need to lie down "occasionally" because of his pain.  (R. at 593.)  Because Dr. Lambert did not specify how long or how often Layton would need to lie down, the ALJ concluded his opinion was not inconsistent with an RFC of light work.

To the extent Dr. Lambert opined that Layton cannot work because of his pain, the ALJ found his opinion inconsistent with the record.  Specifically, the ALJ noted that after each hernia surgery, Layton "was noted to be doing good."  (R. at 26, 176,

---

[6] After the ALJ denied Layton's claim, Dr. Lambert wrote a letter stating that he was confused in filling out the "Non-Exertional Factors Affecting Your Patient" form and should have marked that Layton would need to rest "constantly" rather than "occasionally."  (R. at 597–98.)  Layton has not addressed the effect of this letter on the ALJ's disability determination.

178, 179, 182, 184, 287.) Additionally, Layton has consistently reported no problems with pain. (R. at 246, 285, 287, 303–04, 382–83, 389, 398, 400, 403, 457, 462, 465–68.) And, when Layton has reported pain, he has described it is intermittent and not severe. (R. at 303, 465.) The ALJ also noted that Dr. Lambert has never prescribed Layton any pain medication. (R. at 26.) Furthermore, the record does not show that Layton has ever taken pain medication for his hernias, nor has he been referred for pain management. (R. at 26.) In light of these facts, the ALJ's decision to discredit Dr. Lambert's opinion regarding Layton's pain was reasonable and supported by substantial evidence.

Because the ALJ discredited Dr. Lambert's opinion about the severity of Layton's pain, the ALJ was also permitted to discredit Dr. Lambert's opinion about the effects of Layton's pain. Dr. Lambert completed a form titled the Non-Exertional Factors Affecting Your Patient. (R. at 593.) This form asked Dr. Lambert to check yes or no to the following question: "[a]s a result of claimant's medical condition[, a]ttendant limitations, pain and/or any side effects of medication(s), would the claimant likely have to miss 2 or more days per month from work?" (R. at 593.) To this question, Dr. Lambert answered "Yes." (*Id.*) Dr. Lambert then explained that Layton would miss work because his abdominal wall hernia caused him pain and discomfort. (*Id.*) Yet, the ALJ found that Layton does not suffer disabling pain

11

because of his hernias.  Based on this finding, the ALJ was not required to credit Dr. Lambert's opinion that Layton would miss two or more days of work.

At this point, the court notes that the ALJ did not discredit Dr. Lambert's opinion that Layton should do "no lifting or straining whatsoever." (R. at 593.) While the ALJ did not specifically mention Layton's lifting restrictions in his RFC statement, (R. at 21), this omission is not fatal.  The ALJ was aware of this portion of Dr. Lambert's opinion.  (R. at 593) ("[Dr. Lambert] restricted [Layton] from lifting or straining whatsoever.").   Moreover, the ALJ's hypothetical question to the vocational expert clearly incorporated Dr. Lambert's lifting restriction.  (R. at 44) ("[T]his person would be limited to light exertional work.  It is found stress free for lifting and carrying and so forth.") (emphasis added).

The ALJ found that Dr. Lambert's opinion about Layton's pain is inconsistent with the medical record.  This conclusion is supported by substantial evidence. Therefore, the ALJ did not err in discrediting Dr. Lambert's opinion about Layton's pain.

**B.    Layton's Allegations Regarding His Pain**

Layton also argues the ALJ improperly discredited his testimony regarding his disabling pain.  The court disagrees.  In assessing a claimant's subjective allegations of pain, an ALJ must determine if the claimant has a "medically determinable

impairment that could reasonably be expected to produce . . . symptoms, such as pain." 20 C.F.R. § 404.1529(b).  If the claimant meets this first prong, then the ALJ must determine if: (a) "objective medical evidence . . . confirms the severity of the alleged pain arising from that condition" or (b) "the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  On this second prong, a plaintiff's subjective testimony alone can establish that he suffers from disabling pain.  *Id.* at 1561.  When a plaintiff offers such testimony, an ALJ must clearly articulate his reasons for rejecting that testimony.  *Id.* at 1561–62.

Here, the ALJ found that Layton clearly met prong one because of his history of hernias.  However, Layton failed to meet either part of prong two.  First, Layton failed to submit medical evidence which objectively confirms his alleged pain.  (R. at 26.)  Second, Layton's testimony failed to establish the severity of Layton's condition.  Layton did testify that he has significant pain which requires him to lie down for two to three hours at a time.  (R. at 22.)  If this allegation is true, then Layton is unemployable.  (*See* R. at 47.)  However, the ALJ found that Layton's testimony is "not supported by the medical evidence, nor confirmable through other means."  (R. at 26.)  It is this credibility finding that Layton challenges.

13

Layton contends the ALJ failed to explain his reasons for discrediting his testimony.  However, the ALJ adequately and thoroughly explained his reasons. First, the ALJ noted that Layton consistently reported doing well after his hernia surgeries. (R. at 25–26.) Though Layton experienced some pain before his surgeries, the record shows his hernias have not reoccurred since his last surgery.  (R. at 26.) The ALJ also pointed out that Layton is not taking pain medication and has not been sent for pain management.    (R. at 26.)    Additionally, the ALJ noted that Dr. Lambert's opinion said that Layton would need to lie down only "occasionally," not for two to three hours at a time as Layton alleges. (R. at 26.)  Finally, the ALJ said that Layton's daily activities—such as caring for his personal needs, driving, shopping, and helping with household chores—undermine his allegations of disabling pain. (R. at 26–27.)  As with Dr. Lambert's opinion, the ALJ's stated reasons are supported by substantial evidence.  *See* Section III.A.

Layton argues that the ALJ erroneously found that his daily activities show does not suffer from disabling pain.  While a claimant's ability to engage in household chores does not conclusively refute his subjective pain testimony, *see Smith v. Califano*, 637 F.2d 968, 971–72 (3rd Cir. 1997), an ALJ is certainly entitled to consider these activities in making his credibility determination.  *See* 20 C.F.R.

§ 404.1529(c)(i).  And, when combined with the other evidence the ALJ cited, the court cannot say that the ALJ's finding is unreasonable.

Moreover, even if the ALJ erred in discrediting Layton's testimony based on his daily activities, this error was harmless.  *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine in the social security context).  The other reasons the ALJ articulated for discrediting Layton's testimony—i.e., Layton's treatment history, his lack of pain medication, and Dr. Lambert's opinion about his need to lie down "occasionally"—are sufficient to support the ALJ's adverse credibility finding.

Additionally, Layton argues that his longitudinal history regarding his hernias shows that he suffers from disabling pain.  However, though Layton has a longitudinal history of treatment for his hernias, his treatment records do not indicate he has a longitudinal history for pain.  In fact, as the court has already pointed out, the record shows that Layton frequently denied experiencing any pain.  *See* Section III.A.  And, while the longitudinal record supports Layton's allegation that he is unable to lift more than five pounds, it simply does not establish his disabling pain.

Because the ALJ's credibility finding is supported by substantial evidence, the ALJ properly did not err in discrediting Layton's testimony regarding his pain.  And,

15

because the ALJ did not err in discrediting Layton's testimony, he did not err in his disability determination.

## IV.    CONCLUSION

For these reasons, the decision of the Commissioner is due to be, and hereby is, **AFFIRMED**.  The court will enter a separate final judgment.

**DONE** and **ORDERED** this the 21st day of February, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge